UNITED STATES of America,
Appellant,

v.

Jewel HAWKINS, Appellee.

No. 13887.

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1955.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Edward W. Rothe, Sp. Assts. to Atty. Gen., William T. Plummer, U. S. Atty., Arthur D. Talbot, Asst. U. S. Atty., Anchorage, Alaska, for appellant.

Bell & Sanders, Anchorage, Alaska, for appellee.

Before DENMAN, Chief Judge, and ORR and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

The United States appeals from a decision of the District Court of the Third Division of the Territory of Alaska rendered by Judge Limond on March 9, 1953, in a suit brought by Mrs. Hawkins against one Savage. Mrs. Hawkins attached the indebtedness of Warrick Co., to Savage. Warrick Co., paid that amount into court and the suit became one of Mrs. Hawkins against Savage's interest in the fund of $2,341.87 held by the court. The United States intervened with a complaint alleging Savage owed it $3,344.37. The court held Mrs. Hawkins' claim preceded that of the United States and awarded the fund to her. This appeal followed.

Mrs. Hawkins contends the court never acquired jurisdiction in personam over Savage, to entitle the United States to claim against Savage's interest in the fund. It is apparent that this always

underlying question of jurisdiction must be determined before we can consider the merits of the question of the precedence of the two litigants claiming the fund.

Mrs. Hawkins' complaint was filed on February 21, 1950. Her attachment on the debt owed by Savage to the Warrick Co., was on April 19, 1950. On September 21, 1950, the complaint in intervention of the United States was filed. It is not questioned that Savage was not in Alaska and was in California. An affidavit on behalf of Mrs. Hawkins was filed with the court on October 31, 1950, showing Savage's absence from Alaska and that her complaint showed a cause of action against Savage. On October 30, 1950, the court made its order " * * * that service of summons in this action may be made on the defendant by publication * * *"

Section 55-4-10 of the Alaska Code provides that once the order is made for publication it need not be published at all, stating:

"When publication *is ordered,* personal service of a copy of the summons and complaint out of the Territory shall be equivalent to publication and deposit in the post office."

After the entry of the above order on November 14, 1950 the United States caused to be served on Savage, by the United States Marshal, the court's summons and an attached copy of its complaint.

The contention of Mrs. Hawkins is that, though the order is general in its terms and refers to service "in this action" and mentions no particular party's complaint, it gave no right to the United States to serve Savage in California because the motion for the order was made by her and the affidavit showing Savage absent from Alaska was filed on her behalf.

We do not agree. Savage was as completely advised of the government's action against his interest in the fund held by the court as he would have been of

Mrs. Hawkins' action had she served her summons and complaint without a publication. We think the statute did not require repetitious motions and orders but that the general order of the court gave the United States the power to make its service in California.

On the merits of the government's appeal from the judgment for Mrs. Hawkins, ordering the payment of all the fund to her, we think the district court erred.

The district court found that Hawkins' lien was entitled to priority over that of the government even though the government's lien was first in time. The Court based its decision on 26 U.S.C. § 3672 (now 26 U.S.C. § 6323(a)) which provided:

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, *purchaser,* or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated * * *." [Emphasis added.]

Hawkins had an *attachment lien.* It arose after the government's tax lien but before the tax lien was filed. The district court found that she was a "purchaser" within the protection of 26 U.S.C. § 3672(a) (1) enacted in 1913 because of a statute passed for Alaska by Congress in 1900, Section 55-6-67, A.C.L.A.1949, providing that:

"From the date of the attachment until it be discharged or the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached * * *."

The question is whether in so providing for a "purchaser" in Section 3672(a) (1) Congress intended to confer its benefits on buyers of property who did not

have notice of the interest of the government, or were the benefits to be conferred on those "deemed" purchasers under local statutes as well.

■ The Supreme Court has held repeatedly that state statutes and decisions providing that attachment creditors, or others with similar interests, shall be deemed purchasers or judgment creditors do not make them purchasers or judgment creditors within the meaning of Section 3672 of the Internal Revenue Code. The classes of persons who take priority over the government's unrecorded tax lien under Section 3672 are those who are purchasers or judgment creditors *in the ordinary sense.* See, e. g., United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244; United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239; United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. The Supreme Court stated in United States v. Scovil, 1955, 348 U.S. 218, 221, 75 S.Ct. 244, 247, that a "purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." See also our decision in United States v. England, 9 Cir., 1955, 226 F.2d 205, to the same effect.

We see no reason why the Territory of Alaska should be an exception to these decisions. Congress stated in Section 3672 that it intended to protect judgment creditors, those with a cause of action which has been established both as to existence and as to amount in a court. The language of the statute indicates that only persons with such fixed uncontingent interests were to be protected from a tax lien of which they had no notice. Mortgagees and pledgees have existing security interests for which they have given consideration. The interest of a judgment creditor is fixed as to right and amount as would be the interest of a "purchaser" if that term were taken to mean only a buyer of property. An attaching creditor has only an inchoate lien because at the time of the attachment the fact and amount of his lien are contingent upon the outcome of his suit for damages. Purchaser here means buyer no matter who may be given the rights of a purchaser under state law.[1]

■ Appellee contends that Congress enacted both the Alaska Code section making an attachment creditor a purchaser and the Internal Revenue Code excepting purchasers from tax liens until they are recorded. Congress is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly. However, Section 55–6–67, A.C. L.A.1949, recognizes that the status of purchaser is a contingent one based on ultimate victory in a law suit settling the amount of the judgment. The other items enumerated in Section 3672(a) (1) are not contingent. Taxation statutes should be construed to apply uniformly throughout the country. There is nothing to indicate that Alaskan taxpayers were intended to get a benefit unavailable to the rest of the United States. Appellee Hawkins was not a buyer of property and thus not a purchaser within the meaning of Section 3672(a) (1).

The judgment is reversed.

1. The legislative history of Section 3672 (a) (1) is discussed in Mr. Justice Jackson's concurring opinion in United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53. In United States v. Snyder, 1893, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, it was held an unrecorded tax lien was valid even against a bona fide purchaser. Congress passed Section 3672's predecessor because "any person *taking title to real estate* is subjected to the impossible task of ascertaining whether any person who has at any time owned the real estate in question, has been delinquent in the taxes * * *" [Emphasis added.] H.R.Rep. No. 1018, 62d Cong., 2d Sess. 2 (1912). The problem Congress was seeking to remedy by use of the word "purchaser" thus was the problem of a *buyer* subject to an unrecorded tax lien which he could not discover.